**In re Herman Joseph MARINO, Debtor.**

**Bankruptcy No. 95 B 22465.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 14, 1996.

Gregory K. Stern, Chicago, IL, Eugene J. Geekie, Jr., Michael L. Kayman, Schiff Hardin & Waite, Chicago, IL, for Plaintiff.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter relates to the bankruptcy proceeding filed by Herman Joseph Marino ("Debtor") under Chapter 11 of the Bankruptcy Code, (the "Code"), 11 U.S.C. § 101 *et seq.* Mr. Gregory Thompson ("Thompson") has moved to extend the period of time during which he may file a dischargeability complaint under 11 U.S.C. § 523. For reasons set forth below, that motion is denied.

### *Undisputed Factual Background*

The following facts are shown by the pleadings to be undisputed.

Debtor was at one time Thompson's attorney. He arranged to have Thompson invest in Anthony Dodge, an automobile dealership selling Chrysler cars. Debtor himself held stock in the dealership. The venture did not do well and went out of business. Debtor and Michael Concialdi ("Concialdi") had operated Anthony Dodge. Concialdi has been indicted by a Grand Jury of Cook County for allegedly illegal actions he undertook while operating Anthony Dodge. According to Thompson, Concialdi has alleged that Debtor and not he is responsible for the illegal activities that caused Anthony Dodge to go out of business. Concialdi has also filed for a petition for bankruptcy in this District, Case No. 95 B 00399. Apparently because of Concialdi's allegations, Thompson believes he may have a claim against Debtor, although, as he states in his motion, he is still trying to ascertain if the allegations against Debtor are true. If the allegations are true, Thompson believes he may have grounds to object to Debtor's discharge under § 523(c) of the Bankruptcy Code.

On October 20, 1995, Debtor filed his bankruptcy petition for relief (the "Petition"). At that time he also filed a list of creditors holding the twenty largest unsecured claims. Thompson was not scheduled on that list or any list filed by Debtor with the Petition. As a result, Thompson did not receive notice to creditors sent on October, 28, 1995, by the Bankruptcy Court Clerk ("the Clerk") of the § 341 creditors' meeting and of the date by which dischargeability complaints were to be filed. Such notice is routinely sent out to creditors by the Clerk immediately after a bankruptcy petition is filed. Not having received such notice, neither Thompson or his counsel attended the § 341 creditors' meeting. However, a month after filing the Petition, on November 20, 1995, Debtor filed several additional schedules. One of those supplemental schedules listed Thompson as holding a contingent, unliquidated, disputed claim. Thompson's address was listed in "c/o Mrs. Patricia Thompson," a Chicago attorney, at her office.

By affidavit, Debtor states that on the same day he filed the Bankruptcy Petition, he messengered a copy of the Petition to Mrs. Patricia Thompson along with a letter asking her to cease any collection efforts against Debtor. Debtor's Reply, Ex. A. Mrs. Patricia Thompson is one of the attorneys representing Thompson in the instant Motion. It is not specified by either party's pleadings whether Mrs. Patricia Thompson represented Thompson at the time the Petition was filed. However, in the instant proceedings, she is one of the attorneys of record for Thompson.

Debtor also alleges that Thompson received notice of the bankruptcy on November 20, 1995, when Debtor filed the supplemental schedules with the court. Because there is necessarily some time delay between the filing of schedules and notice to creditors listed on those schedules, Thompson did not likely receive notice of the bankruptcy on the same day those schedules were filed. There is some dispute about whether Thompson or his attorney received actual notice of this bankruptcy prior to November 28, 1995. It is possible that Thompson did not receive notice of Debtor's case until that date, when by court order it was directed that all creditors listed in all the schedules filed receive notice of all proceedings in the bankruptcy case. Thompson received notice of that order and all subsequent pleadings filed in this case.

By supplement filed to the instant Motion, movant acknowledges that his attorneys learned of Debtor's bankruptcy filing on November 28, 1995, when Debtor mentioned his own bankruptcy case in a status hearing before Bankruptcy Judge Katz on the Concialdi bankruptcy. One of Thompson's lawyers was present at that hearing. For purposes of resolving the instant motion, it is assumed *arguendo* that such was the first date on which movant or his counsel received actual notice of the pendency of this bankruptcy.

As in most cases, the Clerk's notice of the § 341 creditors' meeting also notified creditors of the statutory bar date for filing a complaint to bar dischargeability of debts. That bar date fell on January 29, 1996, sixty days after the § 341 meeting took place. Thompson believes he may have a claim against Debtor's estate which is non-dischargeable and would like to file a complaint under § 523(c) of the Bankruptcy Code at this late date. However, it was not until February 5, 1996, six days after the bar date, that Thompson filed the instant motion seeking to extend the date by which he may file such a complaint.

### *Discussion*

The issue in this case is whether an unscheduled creditor may file a complaint objecting to dischargeability after the bar date when that creditor's attorney admittedly received actual notice of the bankruptcy case two months before the bar date, but no formal bar date notice came from the Clerk.

Fed.R.Bankr.P. 4007(c) sets the time to file objections to dischargeability:

A complaint to determine dischargeability of any debt pursuant to § 523(c) of the Code *shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice* of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, *the court may for cause extend the time fixed under this subdivi-*

*sion. The motion shall be made before the time has expired.*

Fed.R.Bankr.P. 4007(c) (emphasis added).

Thus, Rule 4007(c) permits bankruptcy courts to extend the sixty-day period if "cause" is found, but only if motion for such relief is filed "before the time has expired." Fed.R.Bankr.P. 9006(b)(3) limits the authority of bankruptcy courts to extend the sixty-day period only to what Rule 4007(c) permits:

The court may enlarge the time for taking action under Rule ... 4007(c) ... only to the extent and under the conditions stated in those rules.

Fed.R.Bankr.P. 4007 refers to 11 U.S.C. § 523(c) which provides in relevant part:

Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

The foregoing sixty-day deadline and notice to be served by the Clerk on creditors must be read in tandem with 11 U.S.C. § 521(1) and Bankruptcy Rule 1007(a)(1) requiring debtors to list all creditors and file such a list with the petition for relief. If debtors fail in that duty, then no notice can be sent by the Court Clerk under Rule 4007.

In this case, the Rule 4007(c) deadline for filing a motion to extend the bar date for filing complaints objecting to dischargeability was January 29, 1996. Since the instant motion was filed on February 5, 1996, Debtor objects to it as untimely under Rule 4007 and relies on Thompson's actual notice of the bankruptcy in ample time to file a timely motion.

Thompson asks that the sixty-day bar date be extended because he never received formal notice from the Clerk as required by Rule 4007(c). He argues that Thompson's actual knowledge of the bankruptcy two months before the January 29, 1996, deadline does not fulfill the notice requirements of

Rule 4007(c) and that depriving him of a right to file his non-dischargeability complaint violates his Due Process rights under the Fifth Amendment to the United States Constitution.

### The Due Process Clause Authorizes the Requested Extension If Reasonable Notice Were Absent

Debtor points out under Rule 4007(c) that any motions seeking to extend the bar date must be filed within the sixty-day period before the expiration of the bar date. Most courts have applied that Rule strictly, holding that, once the sixty-day period under Rule 4007(c) has elapsed, a properly scheduled creditor can never raise the question of the non-dischargeability of a claim. *Re/Max Properties, Inc. v. Barnes (In re Barnes)*, 96 B.R. 833 (Bankr.N.D.Ill.1989) (Schmetterer, J.); *Federal Deposit Insurance Corporation, v. Kirsch (In re Kirsch)*, 65 B.R. 297 (Bankr. N.D.Ill.1986) (Ginsberg, J.); *Manufacturers Hanover Trust v. Shelton (In re Shelton)*, 58 B.R. 746 (Bankr.N.D.Ill.1986) (Ginsberg, J.); *In re Smolen*, 48 B.R. 633 (Bankr.N.D.Ill. 1985) (Eisen, J.); *Estate of Hanson v. Walgamuth (In re Walgamuth)*, 144 B.R. 465, 467–68 (Bankr.D.S.D.1992) (collecting cases).

Bankruptcy Rules 4007(c) and 9006(b) implement a strict Congressional intent that

> certain types of nondischargeability claims would be automatically cut off after a relatively short period of limitations in order to prevent debtors from being harassed by creditors after their claims had been discharged in bankruptcy. Congress meant to cure the abuse whereby debtors were routinely sued by creditors long after bankruptcy claiming that their claims were not discharged because of fraud or a false financial statement. This is the policy that

underlies § 523(c) of the Bankruptcy Code. (citations omitted).

*In re Kirsch*, 65 B.R. at 299.

■ Because Rule 9006(b)(3) restricts the discretion of bankruptcy courts to extend this sixty-day period, courts have generally viewed the deadline fixed by Rule 4007(c) to be "set in stone." *See In re Kirsch*, 65 B.R. at 299. Once time expires, the filing period cannot be extended on grounds of excusable neglect or otherwise. *Id., citing In re Shelton*, 58 B.R. 746, 748–49 (Bankr.N.D.Ill.1986).

This "set in stone" interpretation, however, cannot be applied in all cases. Because Bankruptcy Rule 4007(c) requires the court to give no less than thirty days notice to a creditor of the deadline and because of Constitutional due process concerns, courts have not enforced the sixty-day bar date where a creditor did not receive notice of the bankruptcy or of the bar date. *See In re Avery Eliscu*, 85 B.R. 480 (Bankr.N.D.Ill.1988) (Schwartz, C.J.); *In re Walker*, 149 B.R. 511 (Bankr.N.D.Ill.1992) (Schmetterer, J.); *U.S. v. Dambrie (In re Dambrie)*, 153 B.R. 602 (Bankr.D.Me.1993).[1]

■ Thompson does not request an extension because of excusable neglect but because he was not notified by the Clerk of the Bankruptcy Court of the bar date. It is undisputed that the Clerk never sent Thompson notice of the bar date. Because of due process concerns under the Fifth Amendment to the United States Constitution, a bankruptcy judge retains authority to consider extension of the sixty-day period. When applying the Bankruptcy Code or its Rules strictly would deny a claimant due process rights in violation of the Fifth Amendment, then the Constitution must take precedence and the Code or its rules must be set aside or modified in their application. *In re Walker*, 149 B.R. 511, 513 (Bankr.N.D.Ill.1992) (Schmetterer, J.).

---

1. In *In re Dambrie,* the court observed that some courts have carved out exceptions to the sixty-day rule based on "exceptional" or "unique" circumstances. 153 B.R. at 603. The opinion relies on cases where a creditor that sought extension received no notice or defective notice of the bar date and was not reasonably able to file a complaint or seek an extension prior to expiration of the bar date. Those cases relied on in *Dambrie* were not the product of a court fashioned remedy where "exceptional" or "unique" circumstances occur. A better explanation for those holdings is that they viewed the Fifth Amendment as trumping the Bankruptcy Code's procedural requirements.

■ An elemental component of due process is to receive "reasonable notice." As held in the Seventh Circuit and by the Supreme Court,

> It is universally agreed that adequate notice lies at the heart of due process. Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose—and resembles more a scene from Kafka than a constitutional process.

*Chicago Cable Communications v. Chicago Cable Commission,* 879 F.2d 1540, 1546 (7th Cir.1989), *quoting Cosby v. Ward,* 843 F.2d 967, 982 (7th Cir.1988). *See also Peralta v. Heights Medical Centr. Inc.,* 485 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988), *quoting Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965) ("Failure to give notice violates 'the rudimentary demands of due process of law' "). It is well established that a "creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice." *New York v. New York, New Haven & Hartford R.R.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953); *In re Robintech, Inc.,* 863 F.2d 393, 396 (5th Cir.1989), *cert. denied sub nom; Bullock v. Oppenheim, Appel, Dixon & Co.,* 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989).

■ Thus, the sixty-day period outlined by Bankruptcy Rule 4007(c) can be extended if it conflicts with reasonable notice requirements under the Fifth Amendment. If Thompson did not receive "reasonable notice," he may be granted an extension to file a complaint to determine dischargeability even though he filed this Motion to have the bar date extended after that date had passed, and thus the Motion is forbidden under that Rule.

### The Thirty–Day Notice Requirement Under Bankruptcy Rule 4007(c)

Bankruptcy Rule 4007(c) requires that "[t]he Court shall give all creditors not less than 30 day notice of the time so fixed, [the bar date], in the manner provided in Rule 2002." Bankr.Rule 4007(c). Thompson argues that, without the thirty-day notice, the sixty-day period filing period cannot run against him. He asks that the express thirty-day notice requirement of Rule 4007(c) be applied here so as to protect his right to early notice. On the other hand, Debtor asks that Mrs. Patricia Thompson's actual knowledge of the proceedings be imputed to Thompson. Debtor contends that actual knowledge of the bankruptcy case constitutes "reasonable notice" here and alleviates any Fifth Amendment concerns.

The Bankruptcy Code, the history of Rules 4007(c) and 9006(a)(3), and case law decisions provide weighty support for Debtor's argument that actual notice may be sufficient in the dischargeability context to constitute adequate notice of a bankruptcy proceeding as adequate notice of the sixty-day filing period.

■ Rule 4007(c) creates a sixty-day period of time in which dischargeability complaints can be filed, a very short statute of limitations which can only be extended for cause. *In re Walker,* 149 B.R. 511, 515 (Bankr.N.D.Ill.1992). Rule 9006(b)(3) restricts the discretion bankruptcy courts have in extending this period of time. Bankruptcy Rules 4007(c) and 9006(b)(3) were intended to allow that actual knowledge of a pending bankruptcy proceeding may be sufficient to bar the claim of a creditor who took no action, whether or not that creditor received the requisite formal and official notice from the court of various relevant dates.

The predecessor to Rule 4007, Rule 409(a)(2), directed the court to set a time for determining dischargeability of a debt "not less than 30 days nor more than 90 days after the first date set for the meeting of creditors." *See In re Figueroa,* 33 B.R. 298 (Bankr.S.D.N.Y.1983) (describing the evolution of Rule 4007 and 9006). Creditors were to be given "at least 30 days' notice of the time so fixed." Rule 409(a)(2) also permitted the court to extend the time for filing dischargeability complaints "for cause, on its own initiative or on application of any party in interest." A late-filed request for an extension of time for "excusable neglect" could be granted under Rule 906(b) (now Rule 9006(b)).

■ The wording of Rules 4007(c) and 9006(b) adopted in 1984 shows a strong in-

tent that, within the set period of sixty days, participants in bankruptcy proceedings are to be apprised of which debts are subject to an exception to discharge. *See Neeley v. Murchison,* 815 F.2d 345, 346 (5th Cir.1987). Rule 4007(c) sets a fixed limitation period of sixty-days and further constrains the granting of extensions. The sixty-day period can be extended only if the creditor has filed a motion before the sixty-day period expires and then only "for cause." Rule 9006(b)(3) explicitly excepts Rule 4007(c) from the "excusable neglect" standard and permits time enlargement "only to the extent and under the conditions" stated in Rule 4007. This fixed and short limitation period helps debtor and creditors make better informed decisions early in the proceedings. *Neeley v. Murchison,* 815 F.2d at 346. Because of it, in Chapter 11 cases a debtor is better able to formulate a reorganization plan and creditors can better evaluate the feasibility of the plan. *Id.*

■ A creditor, who knows of the proceeding but has not received formal notice, should be prevented from standing back and allowing the bankruptcy action to proceed and then asserting that the debt is nondischargeable. *Byrd v. Alton (In re Alton),* 837 F.2d 457, 459 (11th Cir.1988). Deficient notice from the Clerk, no matter whose fault it is, occurs often enough for such possible creditor behavior to be of concern. The whole process of creating a feasible reorganization plan under Chapter 11 of the Bankruptcy Code is undermined by a creditor that bypasses the bankruptcy court or enters the proceeding at a late date. Knowing which claims are dischargeable and which are not is indispensable to promulgating a feasible reorganization plan.

■ Section 523(c) of the Bankruptcy Code, which Rule 4007 helps implement, also places a heavy burden on the creditor to protect his rights. A debt is automatically discharged unless the creditor requests a determination of dischargeability. Section 523(a)(3)(B) places a burden of investigation of creditors that have not been scheduled.[2] Under § 523(a)(3)(B), even without formal notice from the bankruptcy court, the creditor must abide by the discharge bar date if he has actual knowledge of the case in time to file a claim and request a determination of dischargeability. *See* 11 U.S.C. § 523(a)(3)(B). This implies that the creditor has a duty to find out about the bar date where he has actual notice that debtor has filed for bankruptcy protection. This heavy burden and the fact that the statutory scheme and rules contemplate actual notice to be sufficient in certain circumstances fatally wounds Thompson's argument that, merely because he did not get the formal thirty-day notice, he should be allowed to file his complaint. The thirty-day formal notice is not an indispensable requirement. *Neeley v. Murchison,* 815 F.2d at 347; *DeLesk v. Rhodes (In re Rhodes),* 61 B.R. 626, 630 (9th Cir. BAP 1986); *Woodson v. Tosenberger (In re Tosenberger),* 67 B.R. 256 (Bankr. N.D.Ohio 1986).

Most courts have held that a creditor's actual notice of debtor's bankruptcy filing may satisfy due process requirements under the Fifth Amendment. *Manufacturers Hanover, FKA v. Dewalt (In re Dewalt),* 961 F.2d 848, 850 (9th Cir.1992); *In re Bucknum,* 951 F.2d 204 (9th Cir.1991); *In re Compton,* 891 F.2d 1180 (5th Cir.1990); *In re Alton,* 837 F.2d at 459; *Neeley v. Murchison,* 815 F.2d at 347; *In re Silver,* 107 B.R. 328, 331 (Bankr.D.N.M.1989); *McDermott v. Best,* 1995 WL 330639 (N.D.Ill.1995) (Reinhard, J.); *In re Duncan,* 125 B.R. 247 (Bankr. W.D.Mo.1991); *In re Van Cloostere,* 94 B.R. 131, 134 (Bankr.S.D.Ill.1988) (Meyers, J.).

---

**2.** Section 523(a)(3)(B) of the Bankruptcy Code states:

(a) A discharge under section 727, 1141, 1228[a] 1228[b], or 1328(b) of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(B) if such is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs *unless such creditor had notice or **actual knowledge** of the case in time for such timely filing and request.*

11 U.S.C. § 523(a)(3)(B) (emphasis added).

*Cf. Lawrence Steel Erection Co., Inc., v. Piercy, III (In re Piercy, III)*, 140 B.R. 108, 111 (Bankr.D.Md.1992) (actual knowledge of bar date and enough time to file dischargeability complaint is sufficient for due process purposes).

Several decisions do support Thompson's argument that a creditor cannot be barred from filing a complaint for untimeliness where creditor did not receive thirty-day notice from the court of the bar date. *Shaheen v. Penrose (In re Shaheen)* 174 B.R. 424 (E.D.Va.1994); *In re Hall*, 128 B.R. 175 (Bankr.S.D.Tex.1990); *Herbert v. Schwartz (In re Schwartz & Meyers)*, 64 B.R. 948 (Bankr.S.D.N.Y.1986). Those cases are in the minority, do not give sufficient weight to the statutory and rule scheme, and are not persuasive; the majority view will be followed here. As stated above, the Bankruptcy Code and its Rules show a strong intent to deal with dischargeability issues promptly. In the context of dischargeability, actual notice of the bankruptcy proceeding may, in certain cases, constitute "reasonable notice" for purposes of due process. Where the creditor receives notice adequate enough to afford it an opportunity to file a complaint or seek to extend the time for filing a complaint for dischargeability, such notice fulfills Bankruptcy Code and due process notice requirements. *In re Walker*, 149 B.R. at 514.

Were this a case where Debtor was shown to have knowingly omitted Thompson from the schedules with intent to preclude him from using remedies available to creditors under the Code, the result here should and would have been different. Depending on when such conduct would be discovered, remedies could range from dismissing the bankruptcy case under § 1208(d),[3] revocation of Debtor's discharge or confirmation order, *see Kelly v. Giguere (In re Giguere)*, 165 B.R. 531 (Bankr.D.R.I.1994) (where debtor failed to make full disclosure on its schedules discharge was revoked under § 1144 and order confirming debtor's plan was vacated), or allowance of non-dischargeability complaint to be filed at any time, *Krakowiak v. Lyman (In re Lyman)*, 166 B.R. 333 (Bankr.S.D.Ill.1994) (several creditors who were not scheduled and only received notice of debtor's bankruptcy filing seven months after bar date allowed to file complaints); *Fidelity National Title Insurance Co. v. Franklin (In re Franklin)*, 179 B.R. 913 (Bankr.E.D.Cal.1995) (penalty to debtor for failing to schedule fraud debt or otherwise to inform creditor of bankruptcy is loss of sixty-day limitations period for non-dischargeability claims). However, no such deliberate intent has been alleged here. Debtor is not even alleged to have known pre-petition that Thompson had a claim. At the time the Petition was filed, Thompson had not filed any suit in state court, and it is not alleged that Debtor knew that Thompson was about to do so. Shortly thereafter, when Debtor scheduled Thompson, the Clerk's notice regarding the bar date had already been mailed.

### Thompson's Knowledge of Debtor's Bankruptcy Proceeding Was "Reasonable Notice"

"Reasonable notice" is defined by the Supreme Court as "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust*, 339 U.S. at 314, 70 S.Ct. at 657. *See also Peralta v. Heights Medical Center*, 485 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988) and *Greene v. Lindsey*, 456 U.S. 444, 449–50, 102 S.Ct. 1874, 1877–78, 72 L.Ed.2d 249 (1982) (citing this passage as the accepted standard for the adequacy of notice). As earlier noted, actual notice to a creditor's attorney of the pendency of a bankruptcy may meet the "reasonable notice" requirement. *Carpet Services v. Hutchison (In re Hutchison)*, 187 B.R. 533, 535 (Bankr.S.D.Tex.1995).

---

**3.** Section 1208(d) of the Bankruptcy Code states: (d) On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has committed fraud in connection with the case. 11 U.S.C. § 1208(d).

The totality of circumstances should be examined to determine whether notice was reasonable. *People ex rel. Hartigan v. Peters,* 871 F.2d 1336, 1340 (7th Cir. 1989). One circumstance to consider in evaluating the sufficiency of notice is whether alleged inadequacies in the notice prejudiced the creditor. *Id.* Another is whether notice was given to the creditor in time for it to take meaningful action in response to the impending deprivation of its rights. *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978); *Chicago Cable Communications,* 879 F.2d at 1545 ("adequate notice both appraises the individual of the hearing and permits adequate preparation to present objections").

This definition of "reasonable notice" raises two questions: First, can Mrs. Patricia Thompson's knowledge of Debtor's bankruptcy be imputed to Thompson? Second, did knowledge of the bankruptcy on November 28, 1995, more than two months prior to expiration of the deadline, allow Thompson or his counsel time for adequate preparation to present objections to discharge or timely seek an extension? For the following reasons, the totality of the undisputed circumstances in this case indicate that Thompson's knowledge of Debtor's bankruptcy was adequate notice so that Fifth Amendment concerns are allayed.

Mrs. Patricia Thompson's knowledge of Debtor's bankruptcy on November 28, 1995, can here be imputed to Thompson. It is well recognized that an attorney's actual notice of the pendency of a bankruptcy may be imputed to his client if it occurs within the scope of the attorney-client relationship. *See e.g. GAC Enters., Inc. v. Medaglia (In re Medaglia),* 52 F.3d 451 (2d Cir.1995); *In re Sam,* 894 F.2d 778 (5th Cir.1990); *In re Savage,* 167 B.R. 22 (Bankr.S.D.N.Y.1994); *In re Glow,* 111 B.R. 209 (Bankr.N.D.Ind. 1990).

While it has not been specified by the parties that Mrs. Patricia Thompson was Thompson's counsel for his possible claim against Debtor when she learned of Debtor's bankruptcy, that can be inferred from the fact that she represents Thompson in the instant proceedings. Furthermore, in her affidavit to the court, Mrs. Patricia Thompson did not deny that on November 28, 1995, she was Thompson's counsel. Debtor certainly had that understanding when he scheduled Thompson on the supplemental schedules in "c/o Mrs. Patricia Thompson" at her law offices. On November 28, 1995, when Mrs. Patricia Thompson learned of Debtor's bankruptcy, the record is clear that she was then Thompson's counsel.

Although the scope of that client-attorney relationship on November 28, 1996, is unclear from the pleadings, it could not and need not have expressly included representation of Thompson in the present bankruptcy proceedings. Prior to November 28, 1995, neither Mrs. Patricia Thompson nor Mr. Thompson knew of Debtor's bankruptcy. Mrs. Patricia Thompson therefore could not have been Thompson's counsel for the express purpose of representing him in Debtor's insolvency proceedings. Nonetheless, being that she was Thompson's attorney at the time she learned of Debtor's bankruptcy and represented him in considering any claims against Marino, she had a duty to notify Thompson of that bankruptcy and search the record for a possible discharge complaint bar date. *See In re Rhodes,* 61 B.R. at 630 (finding that debtor has a duty to search the bankruptcy court file after learning of debtor's bankruptcy). Notice or actual knowledge of the bankruptcy filing will be imputed to creditor when it comes to someone who has clear authority to act for creditor. *Western Bank, Santa Fe v. Silver (In re Silver),* 107 B.R. 328. Here Mrs. Patricia Thompson was Thompson's counsel in connection with Marino and could act for Thompson in the bankruptcy. She has admitted that she became aware of Debtor's bankruptcy on November 28, 1996. Her knowledge of Debtor's bankruptcy on that date is therefore imputed to her client.

The final issue is whether notice two months [4] prior to the bar date to a creditor's attorney is "reasonable notice."

---

4. As earlier noted, the time when Thompson first learned of Debtor's bankruptcy is in dispute.

Thompson, through an affidavit submitted, and Mrs. Patricia Thompson, through her own affida-

In *In re Walker*, 149 B.R. 511, the time to file a dischargeability complaint was extended where a creditor who was not an attorney learned of debtor's bankruptcy filing twenty days prior to the date barring filing of dischargeability complaint. In *Walker*, debtor filed for bankruptcy protection but did not schedule Firestone Insurance, one of its unsecured creditors. Through a fortuity, the president of Firestone found out that Debtor had filed for bankruptcy protection. After the bar date had expired, Firestone sought with aid of counsel an extension of the sixty-day period so as to file a complaint against dischargeability of its debt. The extension was granted since the facts there indicated that Firestone did not receive "reasonable notice" under the Fifth Amendment. Two reasons were stated for that decision. First, Firestone had only twenty days actual knowledge before the bar date expired. That was found to be an unreasonably short period of time to enable it to obtain counsel to consider and pursue its rights. Second, actual notice of the bankruptcy there was received by the creditor's president who was not an attorney and thus could not be held to recognize the obligation in bankruptcy to consult counsel immediately and check the claim bar date at once. Most cases cited by Debtor in *In re Walker* were there distinguished because in those cases notice was given directly to the creditor's attorney. Thus, in *Walker* the fact that the creditor received notice rather than its attorney was found to be quite significant. Unlike *Walker*, notice of Debtor's bankruptcy was received by Mrs. Patricia Thompson, Thompson's counsel.

Thompson had two months, from November 28, 1995, until January 29, 1996, to file a complaint or to seek an extension of time to do so. This was ample time for him with aid of counsel to take such action. Thompson or his counsel decided to wait. Why is not clear. Perhaps it was, as Thompson states in the Motion, that he was assessing whether he had a claim. Indeed it is not clear from pleadings filed that he is even now thoroughly convinced that he does have a claim.

After examining the totality of undisputed circumstances pleaded in this case, it is concluded that Thompson received notice adequate enough to afford him an opportunity to prepare and file a complaint by the January 29, 1996, bar date or to seek by that date an extension of time. As in *Walker*, in reaching this conclusion, both the purpose sought to be served by Rule 4007(c) and the circumstances surrounding actual receipt of information about the bankruptcy filing were considered.

Thompson was not prejudiced by the lack of formal notice. With two months of actual notice, he had plenty of time to file his dischargeability complaint or seek an extension of time to do so before the bar date. His attorney could have checked the Bankruptcy Court docket to learn the applicable deadlines. Thompson's Motion notes that he is still assessing whether he may have a non-dischargeability claim against Debtor. It is probably this indecision that slowed his reaction time. If the Motion were allowed, such indecision would result in an open-ended threat, suspended like a deadly pendulum,[5] the very result intended to be prevented under § 523(a)(3)(B) and Rules 4007(c) and 9006(c).

### *Same Result Under § 523(a)(3)(B)*

Under § 523(a)(3)(B), the same result is reached. Section 523(a)(3)(B) in effect states that, if a debtor does not schedule a creditor and that creditor has actual notice of the bankruptcy proceedings and enough time to file a dischargeability complaint, the debt will be discharged unless a timely complaint is filed. *See* 11 U.S.C. § 523(a)(3)(B) (see full text above).

Here, Debtor did not schedule Thompson in the initial schedules he filed with his bankruptcy petition. Because of this, Thompson was not included on the Clerk's notice to creditors of the § 341 meeting and of the bar date for filing dischargeability complaints. Debtor failed to schedule Thompson as a creditor until a later date. However, as

---

vit, claim that the earliest they knew about the bankruptcy was November 28, 1995. Debtor disputes this, claiming that he delivered a copy of the Petition and a letter to Mrs. Patricia Thompson's office on October, 20, 1995, the date of the Petition. However, as discussed, the issue of

whether Debtor had three or two months to file a complaint is not outcome determinative and therefore requires no evidentiary hearing.

5. Edgar Allen Poe, *The Pit and the Pendulum.*

Thompson had actual notice of the bankruptcy and enough time to file a complaint, § 523(a)(3)(B) indicates that the debt owed him should be discharged if a complaint to decide dischargeability is not timely filed.

### CONCLUSION

As a general rule, justiciable controversies should be decided on their merits and not barred by procedural technicalities unless some important policy or purpose is served. Bankruptcy Rules 4007(c) and 9006(b)(3) do indeed reflect an important policy or purpose and their enforcement is basic to proper bankruptcy administration. Unfortunately, for whatever reason, Thompson waited too long to seek a determination that his debt is non-dischargeable. Unhappy facts, however, cannot be allowed to make bad law.

The Bankruptcy Code and the accompanying Bankruptcy Rules of Procedure indicate that adequate actual knowledge on the part of a creditor that debtor has filed for bankruptcy protection is enough to substitute for the Clerk's notice required under Rule 4007(c). Such is the case here. Two months of actual knowledge to Thompson's attorney was time enough. Thompson's Motion must be and is denied.